**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nguyen Hoa Long Ngo, | No. CV-25-04942-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| United States Department of Homeland Security, et al., | |
| Defendants. | |

Before the Court is Defendants' Motion to Dismiss. (Doc. 7.) The Court will grant the Motion.

## I.    BACKGROUND

This is an action for review of U.S. Citizenship and Immigration Services' denial of Plaintiff Nguyen Hoa Long Ngo's naturalization application. The denial of Ngo's naturalization application and this resulting action turn on the facts surrounding Ngo's attainment of Lawful Permanent Resident (LPR) status.

On December 26, 2007, Ngo's father filed a family-based immigration petition on Ngo's behalf. (Doc. 1 ¶ 14.) The petition was approved on July 30, 2009. (*Id.* ¶ 15.) On April 19, 2018, Ngo appeared for an immigrant visa interview at a U.S. Consulate. (*Id.* ¶ 19.) At the time of the interview, Ngo was classified as belonging in the family preference category for unmarried sons of U.S. citizens. (*Id.* ¶ 18.) One day after his interview, Ngo was issued an immigrant visa pertaining to that same preference classification. (*Id.* ¶ 20.) Then, on April 27, 2018, Ngo married. (*Id.* ¶ 21.) After his marriage, on May 14, 2018,

Ngo was admitted to the United States, still classified as the unmarried son of a U.S. citizen. (*Id.* ¶ 22.) If Ngo had been instead classified as the married son of a U.S. citizen, an immigrant visa would not have been available to him until April 2020. (*Id.* ¶¶ 24-25.)

On November 2, 2023, Ngo applied for naturalization. (*Id.* ¶ 26.) USCIS denied Ngo's application, stating that Ngo had not been "lawfully admitted for permanent residence" to the United States and alleging that Ngo had committed willful misrepresentation. (*Id.* ¶ 27.) Ngo then appeared in an appellate hearing before USCIS. (*Id.* ¶ 30.) USCIS affirmed its previous denial, again concluding that Ngo had not been lawfully admitted for permanent residence. (*Id.* ¶ 31.)

In response, Ngo brought this action under 8 U.S.C § 1421(c), seeking review of USCIS's decision. Defendants, the United States Department of Homeland Security, USCIS, Markwayne Mullin, Joseph B. Edlow, Sarah Kendall, and Cynthia Z. Yanez, have moved to dismiss. (Doc. 7.) The Court now rules.

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A court may dismiss a complaint "if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks and citation omitted). A complaint must assert sufficient factual allegations that, when taken as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Plausibility is more than mere possibility; a plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When analyzing the sufficiency of a complaint, the well-pled factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

Federal district courts review the denial of a naturalization application de novo.

- 2 -

8 U.S.C. § 1421(c). A reviewing court "shall make its own findings of fact and conclusions of law." *Id.* "[I]t has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect." *Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 637 (1967).

## III.   DISCUSSION

Defendants argue that Ngo's Complaint fails to state a claim because he alleges facts that establish that he was not lawfully admitted to the United States for permanent residence. Defendants argue that, as a result, Ngo also establishes that he is statutorily ineligible for naturalization. (Doc. 7 at 8.)

### A.   Whether Ngo Was "Lawfully Admitted For Permanent Residence"

Absent exceptions not relevant here, "no person shall be naturalized unless he has been *lawfully admitted* to the United States *for permanent residence* in accordance with all applicable provisions" of the immigration code. 8 U.S.C. § 1429 (emphasis added); *see also* 8 U.S.C. § 1427(a) (restating the general rule that an alien must have been "lawfully admitted for permanent residence" before naturalizing). The phrase "lawfully admitted for permanent residence" is defined in the immigration code's definitional section as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20). The Ninth Circuit, interpreting this definition, has held that an alien was "lawfully admitted for permanent residence" only if the alien was actually eligible for permanent residence when made an LPR. *Shin v. Holder*, 607 F.3d 1213, 1217 (9th Cir. 2010) ("[A]ll grants of LPR status that [a]re not in substantive compliance with the immigration laws [are] void ab initio."). It makes no difference whether an alien ineligible for permanent residence erroneously obtains LPR status through fraud or government mistake—in either case, the alien is not in "substantive compliance" with the immigration laws and therefore has not been "lawfully admitted for permanent residence." *Id.*

Though the Ninth Circuit has not had occasion to apply this "substantive

compliance" rule when reviewing naturalization denials, district courts in this circuit have consistently done so. *See, e.g.*, *Delgado v. Mullin*, No. 24-00560 JMS-RT, 2026 WL 1746536, at *5 (D. Haw. Jun. 17, 2026); *Ekubov v. U.S. Dep't of Homeland Sec.*, No. C20-1104-TL-SKV, 2022 WL 2490733, at *6 (W.D. Wash. Jun. 7 2022); *Ghazavi v. Campagnolo*, No. 8:19-cv-01813-SVW-ADS, 2020 WL 6259997, at *3-4 (C.D. Cal. Sep. 8, 2020); *Ayala v. U.S. Citizenship & Immigr. Servs.*, No. 1:16-CV-0798 AWI BAM, 2017 WL 3023572, at *5 (E.D. Cal. Jul. 17, 2017) (collecting additional cases). Several Courts of Appeals have likewise applied the substantive compliance rule when reviewing naturalization denials. *See, e.g.*, *Turfah v. U.S. Citizenship & Immigr. Servs.*, 845 F.3d 668, 672 (6th Cir. 2017); *Koszelnik v. Sec'y of Dep't of Homeland Sec.*, 828 F.3d 175, 179-80 (3d Cir. 2016); *Injeti v. U.S. Citizenship & Immigr. Servs.*, 737 F.3d 311, 317 (4th Cir. 2013). This Court "is unaware of any basis" for deviating from the consensus. *Ghazavi*, 2020 WL 6259997, at *4. Therefore, if an alien obtains permanent residence despite being ineligible for LPR status—no matter how that LPR status was obtained—that alien cannot naturalize.

The immigration code establishes the processes by which aliens may seek LPR status. As a general rule, an alien who is outside of the United States must obtain an immigrant visa before he or she can enter the United States and become an LPR. 8 U.S.C. § 1181(a). One pathway to obtaining an immigrant visa—the pathway relevant in this case—becomes available if an alien has a qualifying family relationship with either a U.S. citizen or LPR. 8 U.S.C. §§ 1151(a)(1), (b)(2)(A)(i), 1153(a). Not all types of family relationships allow an alien to seek an immigrant visa. *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 48 (2014). And for each type of qualifying family relationship or "family preference category,"* there is a statutory limit on the number of immigrant visas that can be issued on the basis of that category each year. 8 U.S.C. § 1153(a). Therefore, before an alien may apply for an immigrant visa, the alien's U.S. citizen or LPR family member must first petition USCIS to establish that the alien should be classified as belonging in one of

---

* "Immediate relatives" of U.S. citizens are excluded from the discussion that follows. 8 U.S.C. § 1151(b)(2)(A)(i).

the family preference categories. 8 U.S.C. §§ 1154(a)(1)(A)(i), (a)(1)(B)(i)(I). Once an alien receives his or her preference classification, the alien is placed in the queue for an immigrant visa that corresponds to that classification. The alien's place within the queue is based on the date on which his or her petition was filed with USCIS, known as the alien's "priority date." 8 U.S.C. § 1153(e)(1); *Scialabba*, 573 U.S. at 48. Each month, the Department of State publishes a table of priority dates for each family preference category. *Scialabba*, 573 U.S. at 48. If an alien has a priority date that is earlier than the priority date published in the Department of State's table, an immigrant visa is available for the alien. *See id.* (citing 8 C.F.R. § 245.1(g)(1) and 22 C.F.R. § 42.51(b)).

While an alien is in queue for an immigrant visa, changes in the alien's circumstances may cause the alien to be moved into a different preference classification and therefore shifted into a different queue. For instance, if an alien is initially classified as the unmarried son of a U.S. citizen but then, while waiting for an immigrant visa to become available, gets married, the alien is automatically reclassified as the married son of a U.S. citizen and placed into the corresponding queue. 8 C.F.R. § 204.2(i).

Once an alien obtains an immigrant visa, he or she does not automatically become an LPR. *Scialabba*, 573 U.S. at 49. Rather, an alien with an immigrant visa only becomes an LPR once he or she is admitted into the United States. *Id.* And importantly, an alien who obtained an immigrant visa through a family preference category has no right to admission if the Government, at the port of entry, determines that the alien is no longer entitled to that preference classification. 8 U.S.C. § 1154(e). In other words, the possibility of reclassification because of an alien's changed circumstances, such as a change in marital status, lingers over an alien's pursuit of LPR status up through the moment he or she seeks admission into the United States. *Cf. Abdulla v. U.S. Citizenship & Immigr. Servs.*, No. 2:07-cv-02632-GEB-KJM, 2009 WL 1069122, at *1 (E.D. Cal. Apr. 21, 2009) (holding that an alien who obtained an immigrant visa through classification as the unmarried son of a U.S. citizen but married prior to seeking admission into the United States was not lawfully admitted).

The foregoing compels the conclusion that Ngo was not lawfully admitted to the United States for permanent residence. By Ngo's own account, when Ngo was issued his immigrant visa on April 20, 2018, he was classified as belonging in the family preference category for unmarried sons of U.S. citizens. (Doc. 1 ¶ 20.) Yet by the time Ngo sought admission into the United States on May 14, 2018, he was married. (*Id.* ¶¶ 21-22.) Consequently, Ngo was no longer entitled to the preference classification that served as the basis for the issuance of his immigrant visa and, as a result, was no longer entitled to enter the United States using that visa. *See* 8 U.S.C. § 1154(e); *Abdulla*, 2009 WL 1069122, at *1. Moreover, Ngo expressly disclaims the possibility that he might still have entered as a married son of a U.S. citizen. (Doc. 1 ¶ 25.) As Ngo acknowledges, on the date of his entry into the United States, May 14, 2018, he would still have been in queue for an immigrant visa had he been classified as belonging in the preference category for married sons of U.S. citizens. (*Id.* ¶¶ 24-25.) It follows, then, that Ngo was admitted to the United States without a valid immigrant visa—that is, contrary to the requirements of 8 U.S.C. § 1181(a)—and therefore did not substantively comply with the immigration laws when obtaining his LPR status. Accordingly, he was not "lawfully admitted for permanent residence" and is statutorily ineligible for naturalization.

**B.    Consideration Beyond USCIS's Rationale For Denying Ngo's Naturalization Application**

In response, Ngo does not meaningfully try to argue that he was lawfully admitted for permanent residence to the United States. Instead, he posits that the Court cannot deny relief on the basis a rationale not articulated by USCIS when it denied his application for naturalization. (Doc. 8 at 13-15.) Ngo asserts that such a restriction on the scope of this Court's review is mandated by the Supreme Court's landmark administrative law decision in *SEC v. Chenery Corp.*, 318 U.S. 80 (1943). (Doc. 8 at 14.) Because, Ngo contends, USCIS's sole reason for denying his naturalization application was its conclusion that he willfully misrepresented his marital status when he sought admission to the United States, he argues that the Court may not grant Defendants' Motion to Dismiss unless the facts

alleged in his pleadings establish that he did, in fact, willfully misrepresent his marital status. (Doc. 8 at 14-15.)

For their part, Defendants dispute the contention that USCIS denied Ngo's naturalization application only because it determined that he committed willful misrepresentation. (Doc. 9 at 2-3.) But whatever the specific ground for USCIS's denial might have been, Ngo's assertion that the rule from *Chenery* governs the scope of review here is incorrect.

The same statute that authorizes the Court to review USCIS's denial of naturalization applications, 8 U.S.C. § 1421(c), makes this clear. In addition to granting federal district courts the authority to review the denial of naturalization applications, § 1421(c) provides that "[s]uch review shall be de novo, and the court shall make its own findings of fact and conclusions of law." As the Ninth Circuit has explained, this means that "even if the [agency] is allowed to make the initial decision on a naturalization application, the district court has the final word and does not defer to any of the [agency's] findings or conclusions." *United States v. Hovsepian*, 359 F.3d 1144, 1162 (9th Cir. 2004) (en banc) (emphasis deleted). In other words, § 1421(c) grants courts reviewing naturalization applications total adjudicatory independence. Ngo's proposed rule, which, by contrast, would essentially empower USCIS to limit the issues a reviewing court may consider, is therefore "incompatible with the clear command of 8 U.S.C. § 1421." *Kadirov v. Sec'y. U.S. Dep't of Homeland Sec.*, 627 F. App'x 125, 128 (3d Cir. 2015); *see Garcia-Garcia v. Holder*, No. 08CV1129–LAB (AJB), 2010 WL 1292155, at *3 n.3 (S.D. Cal. Mar. 30, 2010) (noting that limitation of a court's review under § 1421(c) to the rationale relied upon by USCIS "appears to contradict the de novo standard"); *see also Louis v. U.S. Dep't of Lab.*, 419 F.3d 970, 978 (9th Cir. 2005) (holding that, where Congress has instructed courts to review an agency's withholding of documents de novo, "judicial review is not limited to the justification for withholding of documents originally relied upon the agency").

This conclusion is bolstered by the problematic results that might arise if Ngo's

- 7 -

proposed rule were adopted.  It is beyond the power of the federal courts to naturalize an alien who does not meet the prerequisites for naturalization established by Congress. *INS v. Pangilinan*, 486 U.S. 875, 883–84 (1988). Yet, consider the scenario where USCIS denies an alien's naturalization application based on the agency's determination that the alien doesn't satisfy prerequisite "X" of naturalization, a determination that, when reviewed by a court, proves to be wrong. As Ngo would have it, the reviewing court would have no choice but to naturalize the alien, even if the court could identify an obvious, alternative prerequisite "Y" that the alien does not satisfy. A rule that would force a reviewing court to act ultra vires cannot be the right rule.

Consequently, when deciding whether to grant Defendants' Motion to Dismiss, the Court is not limited to considering the grounds relied upon by USCIS when denying Ngo's application for naturalization. Rather, so long as the Court can conclude from Ngo's pleadings that he, as a matter of law, cannot obtain any relief, the Court is free to dismiss Ngo's complaint. Because Ngo alleges facts in his pleadings that establish that he was not lawfully admitted to the United States for permanent residence and, as a result, establish that he is ineligible for naturalization, Ngo's complaint must be dismissed.

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, leave to amend should be given freely "when justice so requires." But leave to amend is not required when amendment "would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). Here, leave to amend would constitute an exercise in futility. When amending a complaint, a plaintiff may not allege new facts that are inconsistent with the facts alleged in an earlier complaint. *Reddy v. Litton Industries, Inc.* 912 F.2d 291, 296-97 (9th Cir. 1990). Because Ngo's allegations establish that he is ineligible for naturalization, he cannot resuscitate his claim by alleging additional facts. Accordingly, dismissal is without leave to amend.

. . . .

. . . .

**IV.    CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 7) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Complaint (Doc. 1) is dismissed with prejudice.

**IT IS FINALLY ORDERED** that the Clerk of Court must enter judgment accordingly and close this case.

Dated this 4th day of August, 2026.

Michael T. Liburdi
United States District Judge